STATE of Tennessee, Appellee,

v.

Sherry GOFORTH, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

March 22, 1984.

George W. Hymers, Jackson, for appellant.

William M. Leech, Jr., Atty. Gen. & Reporter, Ann Lacy Johns, Asst. Atty. Gen., G. Robert Radford, Dist. Atty. Gen., Huntingdon, C. Creed McGinley, Asst. Dist. Atty. Gen., Savannah, for appellee.

OPINION

DWYER, Judge.

The appellant appeals as of right her conviction for burning her automobile. T.C.A. § 39-3-203(2). The trial court found her to be a Range I standard offender, neither especially mitigated nor aggravated, and sentenced her to confinement

for two years with a release classification status of thirty percent.

The issues: (1) whether the trial court erred in not suppressing appellant's statement, and (2) whether the evidence is sufficient to support the verdict of guilty.

A Tennessee state trooper testified that he observed the appellant walking on Highway 69-South in the evening hours of October 2, 1982. He arrested her for public drunkenness after smelling alcohol on her breath, noting her lack of coordination and observing that she had wet her pants. The officer made a cursory search for an automobile but was unable to locate one. He then transported appellant to the Hardin County Jail, where she was lodged until the next morning when three of her friends, James Barnes, Eleanor Fick, and Mary Ann Simmons, made bond and secured her release.

At approximately 3:30 p.m. on October 3, 1982, volunteers from the Hardin County Fire Department responded to a call about a burning car near Highway 69-South. They found a 1982 Monte Carlo astride a stump in the middle of a sawdust pile on an abandoned road in Hardin County. The car was still in flames when the firemen arrived, and a thousand gallons of water were required to extinguish the conflagration. The car was identified as being owned by the appellant. An arson investigator testified that he examined the car on October 5, 1982, when it was parked at the jail parking lot. He determined that the fire originated inside the automobile, toward the front seat and dash.

Other evidence showed that appellant returned to the jail on the morning of October 3, 1982, and reported that her car had been stolen. On October 4, 1982, appellant reported the "stolen" car to her insurance company. An insurance adjuster testified that his company valued her car at $7,985. Her net payoff to G.M.A.C. would have been $6,755, and she owed her bank about $3,600 for a personal loan on the car. The State introduced a statement by the appellant in which she admitted setting fire to the car and denied that her friends were involved.

The appellant testified that she had been camping out and became intoxicated on the night of October 2, 1982. She went for a drive, got lost, turned onto a dirt path and got stuck on a stump. After seeing a fire under the hood, she panicked and left the scene. The car was still burning when she and her friends found it the next day. Appellant explained that she did not tell the trooper about her car because she was afraid of being arrested for D.U.I. She admitted lying to her insurance company by saying the car was stolen. Three of appellant's friends testified that her car was on fire when they located it on October 3.

The first issue is whether the trial court erred by overruling appellant's motion to suppress her confession. It was adduced at the suppression hearing that appellant and a friend, James Barnes, were called in and interviewed by arson investigators on October 5, 1982. The appellant was interrogated by a James Robertson while Barnes was being questioned in an adjacent office by a Mr. Pollard. Investigator Robertson testified that after some preliminary conversation, he read the appellant her *Miranda* warnings and she signed a waiver of her rights. They continued to converse until Robertson told her that he did not believe her story. At that point, appellant told him that she wanted to talk to a lawyer. The investigator ceased at this point the interrogation.

Another investigator, a Mr. Frost, then entered Robertson's office. He had been in the other office with Pollard and Barnes and told the appellant that Barnes was telling the truth and that he could not afford any trouble because he had a small child. Frost told the appellant that she might as well cooperate. Appellant then asked whether she would be charged, and Robertson replied that she would be charged and would be taken to the Hardin County Jail. Appellant sat quietly for awhile, then said she would give a statement. Robertson stated that he did not

remind appellant of her *Miranda* rights at that point. He wrote down her confession, in which she admitted setting the car on fire, and appellant signed it.

Appellant's version of the event was that after she requested a lawyer, Pollard entered the room and told her that they had enough evidence on Barnes to "put him away" for twenty years. He told appellant that Barnes and his kids did not need all of the trouble she was causing him. Appellant then told Robertson to write what he wanted to as long as he left Barnes out of it. Appellant stated that the portions of the statement indicating that she set fire to the car were false.

■ In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court said:

> "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present ... If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." 384 U.S. at 474, 86 S.Ct. at 1627.

Once the right to counsel has been invoked, the police may not continue to question the accused until counsel is available, unless the accused himself initiates further communication. *Edwards v. Arizona,* 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).

■ The trial judge's determination with regard to the compliance by the police with *Miranda* and the voluntariness of appellant's confession is binding on appeal unless the evidence preponderates against it. *Braziel v. State,* 529 S.W.2d 501, 506 (Tenn.Cr.App.1975). The trial court held that the appellant did invoke her right to have counsel present. This finding is supported by the evidence. The court went on to hold, however, that appellant waived that right by re-initiating the interrogation. We disagree.

■ The record is clear that when appellant requested an attorney, Investigator Robertson ceased his questions. The evidence then shows that another investigator entered the office and told appellant that her friend, Mr. Barnes, had a small child and did not need any trouble; he was cooperating and she should also cooperate. The Supreme Court has held that "interrogation" in the *Miranda* context:

> "... refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–1690, 64 L.Ed.2d 297 (1980).

The investigator in the case *sub judice* should have known that his remarks were reasonably likely to produce a response from the appellant. His actions were contrary to the clear mandate of *Miranda* that interrogation must *cease* until an attorney is present when a suspect has requested a lawyer.

The *Miranda* court denounced the use of psychological as well as physical coercion in obtaining confessions. The procedure used here is similar to the "Mutt and Jeff" routine described in that opinion. After Robertson's direct approach failed, the other investigator entered the office and urged her to cooperate. His statement that Barnes did not need this trouble carried with it the implication that Barnes would be prosecuted unless the appellant cooperated. The reference to Barnes' small child was an obvious attempt to play on the appellant's sympathies. The facts simply do not support the State's theory that appellant voluntarily waived the right to counsel which she had previously invoked and resumed the interrogation without any prompting from the investigators. The evidence preponderates against the trial court's decision not to suppress the statement. The first issue is sustained.

The second issue: Without the confession, the evidence may be sufficient to support a guilty verdict. In view of our deci-

sion to remand this case, the evidence issue will not be reached.

The judgment of the trial court is reversed. The case is remanded for a new trial.

CORNELIUS, J., and RICHARD R. FORD, Special Judge, concur.